UNITED STATES, Appellant

v.

PAUL EDWARD MESSENGER, Airman, U. S. Navy, Appellee

2 USCMA 21, 6 CMR 21

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

No. 310

■■■■■■■■■■■■■■■■■■■■■

Decided October 6, 1952

CAPT. Francis C. Foley, USMCR, for Appellant.
CDR. Raymond van Wolkenten, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by special court-martial[1] for two offenses in violation of the Uniform Code of Military Justice, 50 USC §§ 551–736, namely, larceny and impersonating an officer. He pleaded guilty to the first offense and not guilty to the second. The court-martial found him guilty of both and sentenced him to be discharged from the service with a bad-conduct discharge, to forfeit $68.60, and to be confined at hard labor for one month. The convening authority approved only so much of the sentence as provided for confinement and a bad-conduct discharge. The board of review for reasons hereinafter set forth set aside the findings and sentence and ordered the charges dismissed. Pursuant to Article 67(b)(2) of the Uniform Code of Military Justice, 50 USC § 654, The Judge Advocate General of the Navy certified the case to this Court to obtain answers to three questions. In substance these seek a determination of whether the board of review was correct in holding: (1) that the court-martial erred in not rejecting accused's plea of guilty to the charge of larceny; (2) that deception, prejudice to a third party and a benefit to the accused are necessary elements of the offense of impersonating an officer; and (3) that impersonating an officer is such a minor offense that the board of review could dismiss the proceeding because accused should have been tried by a summary court-martial or charges should have been disposed of under Article 15, 50 USC § 571 (Commanding officer's non-judicial punishment).

The board of review in reaching its conclusion on the first certified question held that the evidence offered in extenuation and mitigation was inconsistent with accused's plea of guilty to Charge I and that failure of the court-martial to reject his plea and require a hearing on the merits was prejudicial error. For the reasons hereinafter set forth we believe the board of review misconstrued the legal effect of the testimony.

Article 45(a), Uniform Code of Military Justice, 50 USC § 620, sets forth

---

[1] 3–51–S–367.

22

the principles governing the rejection of a plea of guilty. It reads as follows:

"(a) If an accused . . . after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, . . . a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."

In explanation of this Article, the Manual for Courts-Martial, United States, 1951, Paragraph 70b(4), page 109 states:

"Whenever an accused, in the course of trial following a plea of guilty, makes a statement to the court, in his testimony or otherwise, inconsistent with the plea, the court will make such explanation and statement as the occasion requires. If, after such explanation and statement, it appears to the court that the accused in fact entered the plea improvidently or through lack of understanding of its meaning and effect, or if the accused does not voluntarily withdraw his inconsistent statement, the court will proceed to trial and judgment as if he had pleaded not guilty. . . . ."

The applicability of the quoted provisions from the Code and Manual, supra, allegedly arises in this case because of evidence produced by the accused in support of his attempt to show mitigating and extenuating circumstances for the purpose of reducing the sentence. In this connection it should be kept in mind that accused was represented by qualified counsel, he entered a plea of guilty to the charge of larceny, a full explanation was made to him of the effect of the plea, and he and his counsel persisted in having it stand after the explanation.

Following the findings of guilty on both charges, the court-martial announced it would hear matters in mitigation, and defense counsel called a Lieutenant Hoffman as a witness. He testified as to the value and condition of the property. After he had explained that most of the property was used,

damaged, and of little value, trial counsel made the following statement:

"TRIAL COUNSEL: The prosecution would like to advise the court that this particular line of questioning and the answers could possibly draw a finding of not guilty in this case to the first specification, and I would like for the court to decide whether such a plea should be entered and a particular specification tried."

In reply defense counsel stated that the accused was aware of the nature of the evidence and that its purpose was not to deny the commission of the crime but rather to show the stolen property was of little value. We are of the opinion that counsel for the accused properly considered the legal effect of the evidence, as it was not inconsistent with the plea. This becomes apparent when consideration is given to the allegations of the specification and the complete story told by the Lieutenant.

The specification alleges the theft in the following language:

"In that . . . Messenger . . . did . . . steal one acetylene cutting torch attachment, value of about $0.50, one acetylene welding torch body, value of about $0.50, one inspection mirror, value of about $1.20; one depth gauge, value of about $1.00; one spring winding tool kit, value of about $2.00; one set of router bits, value of about $3.00, and one 3/8–7/16 inch open end wrench, value of about $0.35; all being of a total value of about $8.55 and the property of the United States Government."

The Lieutenant testified that the inspection mirror and the 3/8–7/16th inch open end wrench which were taken by the accused were new; that he was familiar with their value; that the former was worth $1.35, and the latter was worth $0.35. As to the other property allegedly stolen, it is apparent from the specification that the salvage value only was alleged and the testimony of the witness corroborates that fact. The substance of his testimony does not deny the theft. On the contrary, it tends to prove the offense but seeks to diminish the value. So long as the property has some value it is the subject of larceny,

**23**

and there was no evidence that the property was worthless. We, therefore, conclude the board of review erred in holding the plea of guilty should have been rejected.

The second question is whether the following elements are essential to the crime of impersonating an officer when charged as an offense under Article 134, Uniform Code of Military Justice, 50 USC § 728: (1) deception; (2) that the deception was such that someone was prejudiced or misled; and (3) that the accused must derive a benefit from the deception.

In disposing of the charge of impersonating an officer, the board of review quoted the following definition from Black's Law Dictionary, Third Edition:

> "'Personate. In criminal law. To assume the person (character) of another, without his consent or knowledge, in order to deceive others, and, in such feigned character, to fraudulently do some act or gain some advantage to the harm or prejudice of the person counterfeited.'"

Reasoning that the evidence was not sufficient to meet the standards set forth in the definition, the board of review concluded that the acts of the accused were, at most, a minor offense chargeable as conduct to the prejudice of good order and discipline, that the offense should have been tried by a summary court-martial, or punishment administered under nonjudicial proceedings.

The offense was alleged as a violation of Article 134, Uniform Code of Military Justice, supra. This is the general or catch-all article and it reads as follows:

> "Though not specifically mentioned in this code, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general or special or summary court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."

The board of review apparently concluded the charge was laid under the third clause (crimes and offenses not capital), as the definition from Black's Law Dictionary, supra, seems to better fit that category. The elements listed in that definition might be apropos for the civilian offense, but we are here concerned with those necessary to establish the military crime and the test is entirely different.

In the case of United States v. Snyder (No. 409), 1 USCMA 423, 4 CMR 15, decided June 5, 1952, we discussed the three separate clauses and showed their applicability to certain crimes. Without repeating what we said in that case, we here hold that the offense charged falls under disorders to the prejudice of good order and discipline of the armed forces. It has been so characterized for many years. Colonel Winthrop in his Military Law and Precedents, Second Edition, 1920 Reprint, page 726, gives illustrations of various acts which have been well known as neglects or disorders to the prejudice of good order and discipline. He specifically mentions falsely impersonating and acting as an officer, and the supporting footnote discloses that a general order publishing a finding of and sentence for that offense was dated in 1865.

Paragraph 213, Manual for Courts-Martial, supra, in discussing the general article has this to say:

> "'To the prejudice of good order and discipline' refers only to acts directly prejudicial to good order and discipline . . . .
>
> . . . . . . .
>
> "Instances of such disorders and neglects in the case of enlisted persons are: Appearing in improper uniform; wrongfully abusive use of military vehicles; careless discharge of firearms; and *impersonating an officer*." [Emphasis supplied]

The gravamen of the military offense of impersonation does not depend upon the accused deriving a benefit from the deception or upon some third party being misled, but rather upon whether the acts and conduct would influence ad-

versely the good order and discipline of the armed forces. It requires little imagination to conclude that a spirit of confusion and disorder, and lack of discipline in the military would result if enlisted personnel were permitted to assume the role of officers and masquerade as persons of high rank. We refer briefly to two board of review cases which have affirmed convictions under similar circumstances.

In United States v. Miller, 43 BR 135, the accused was charged with violating Article of War 96, 10 USC § 1568, in that he unlawfully impersonated an officer. The board of review supported a finding of guilty of the offense without a showing of benefit. In its opinion it stated:

"It will be noted that the specifications of the Charge do not allege, and the evidence does not show, that accused falsely impersonated an officer and thereby fraudulently demanded, claimed or obtained something of value—an offense in violation of Title 18, Section 76, United States Code, and punishable by imprisonment for a term of three years (CM 120050). The accused is merely charged with the wrongful and unlawful impersonation of a captain and sergeant of the Army of the United States by wearing the uniform and insignia of those grades, in violation of Article of War 96 . . . ."

In the case of United States v. Yaroslowsky, 66 BR 121, a board of review in considering a finding of guilty of the same offense stated: .

". . . . the wilful and illegal impersonation of an officer of the Army of the United States has been held to be a military offense within the scope of Article of War 96 as a 'disorder . . . to the prejudice of good order and military discipline' and as 'conduct of a nature to bring discredit upon the military service' (CM 266137, Miller; CM 318380, Yabusaki).

. . . . . . .

"It will be noted that the specification does not allege that the accused falsely impersonated an officer and thereby fraudulently demanded, claimed or obtained something of value, an offense in violation of Title 18, Section 76, United States Code, punishable by imprisonment for a term of three years and therefore the statute is not applicable [as to the sentence] (CM 266137, Miller; CM 318380, Yabusaki)."

Accused was guilty of deception in holding himself out as an officer and since we approve the general principles announced in the foregoing authorities and hold that the offense may be committed, regardless of whether the deception misled a third party or the accused gained some benefit, it follows that the board of review erred in holding to the contrary.

The third question poses a question of whether the board of review erred in dismissing Charge II (impersonating an officer) because it concluded the accused should have been tried by a summary court or punished under the provisions of Article 15 (commanding officer's non-judicial punishment), Uniform Code of Military Justice, supra. Again we are required to disagree with the reasoning of the board of review. If an offense has been committed, decision as to whether trial should be by court-martial or under the proceedings permitted under Article 15, rests first in the commanding officer and then in the other appropriate officers in command channels.

The Manual, in discussing the action to be taken by the commander exercising jurisdiction under Article 15, provides that unless competent superior authority has directed otherwise, he (commanding officer) may impose punishment under Article 15 for any minor offense. If, however, he believes that the offense is serious enough to justify trial by special or summary court-martial, he may prefer charges. These charges are then forwarded to an officer properly authorized to convene an appropriate court. In this instance the immediate commanding officer and the officers in the chain of command concluded that the offenses committed by the accused justified a trial by special court-martial. They are granted dis-

**25**

cretion in determining the necessity for adequate punishment and the type of court by which an accused may be tried. The discretion thus exercised may not be interfered with by a board of review except possibly in those cases where an abuse has been shown. In the case of this particular accused, there were two specifications, alleging two offenses, and while each offense might be considered minor, a conclusion we do not necessarily draw, the combination of the two would justify the commanders concerned in concluding to try the accused by special court-martial. Moreover, there are considerations not shown in the record which may have a direct bearing on the forum selected to try the accused. Clearly no abuse of discretion appears in this case. Undoubtedly the board of review felt the accused had been unjustly dealt with. However, it had means to correct any injustice. Had the board concluded that the evidence was not sufficient to sustain the charge of impersonating an officer, then it could have disapproved the finding of guilty. But in its opinion the board stated otherwise as it found that an offense in violation of Article 134, supra, had been committed. Such being the case, it follows that trial by special court-martial was not inappropriate. Moreover, the board has the authority to approve only so much of a sentence as it determined, on the entire record, should be approved. If it concluded the sentence was excessive a lesser one might have been approved. But the power to consider whether a sentence is appropriate does not include the authority to overrule the selection of a court.

While we have disposed of the questions certified by The Judge Advocate General of the Navy, this does not dispose of the review. The accused in contesting the petition contends that a reversal by us and a reference to the board of review for further consideration will offend against the Fifth Amendment to the Constitution by placing him twice in jeopardy. Our answer to this assertion is fully developed and decided adversely to the accused in the case of United States v. Zimmerman (No. 261), 2 USCMA 12, 6 CMR 12, this day decided. For the reasons therein expressed we decide this issue against the accused.

The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Navy to be forwarded to the board of review for action consistent with the views herein expressed.

Chief Judge QUINN and Judge BROSMAN concur.