UNITED STATES, Appellee

v.

LAVORNE E. STEELE, Technical Sergeant,
U. S. Marine Corps, Appellant

2 USCMA 379, 9 CMR 9

LCDR John P. Marlais, USNR, and LTJG Robert Emmet Dunne, USNR, for Appellant.

CDR E. L. McDonald, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged with two specifications of forgery in violation of Article 123 of the Uniform Code of Military Justice, 50 USC § 717, and one specification of making a false claim in violation of article 132 of the same Code, 50 USC § 726. He pleaded guilty to all of the charges and specifications and was sentenced to a bad-conduct discharge, total forfeitures and two years' confinement. The convening authority approved the findings and sentence but suspended the bad-conduct discharge and confinement in excess of eleven months and 29 days for an eighteen-month probationary period, with the proviso that unless the suspension was sooner vacated, the suspended portions should be remitted. A board of review in the office of The Judge Advocate General of the Navy held that the two specifications alleging forgery involved substantially one transaction and should not be made the basis for a multiplication of specifications. It concluded, therefore, to disapprove the findings on the first specification of forgery. The sentence, as modified and approved by the convening authority, was affirmed. The accused petitioned this Court to review his conviction and we granted the petition to determine the single question of whether the specification under Charge II, which involved the offense of making the false claim, stated an offense under Article 132, supra.

The offense was alleged in the following language:

"In that Lavorne E. Steele, . . . did, at the U. S. Marine Corps Air Station, Cherry Point, North Carolina, on or about 25 September 1951, by preparing a request for commutation of rations for presentment to the commanding general of said air station, an officer of the United States duly authorized to approve such claim, make a claim against the United States at the rate provided by law for commutation of rations, to wit: $1.05 per day, which claim was false and fraudulent in the amount of $1.05 per day, in that said claim, as he, the said Steele, then knew, contained a statement that he, the said Steele, would, if said claim were approved, subsist with his family at Copeland's Auto Courts, Morehead City, North Carolina, which statement was false and fraudulent in that he, the said Steele, did not then intend to so subsist with his family, and was then known by the said Steele to be false and fraudulent."

A comparison of this specification with the form specification found in Appendix 6, paragraph 106, page 486 of the Manual for Courts-Martial, United States, 1951, discloses that the pleader used the exact form therein prescribed. While not conclusive, this suggests that the Government elected to prosecute the case under subsection (1) (A) of Article 132, Uniform Code of Military Justice, supra. That Article defines frauds against the Government, and sets out several different ways in which that offense may be committed. In so far as is pertinent to our disposition of this case, it provides as follows:

"Any person subject to this code—
(1) who, knowing it to be false or fraudulent—
(A) makes any claim against the United States or any officer thereof; or
(B) presents to any person in the civil or military service thereof, for approval or payment, any claim against the United States or any officer thereof; . . . .
shall, upon conviction, be punished as a court-martial may direct."

The Manual, in prescribing the elements to be established to prove the commission of the offense defined under (1)(A) states (paragraph 211a, page 377):

"(a) That the accused made a certain claim against the United States, as alleged; (b) that the claim was false or fraudulent in the particulars specified; (c) that when the accused made the claim he knew that it was false or fraudulent in such particulars; and (d) the amount involved, as alleged."

The elements designated in parts (b), (c) and (d) of the proof set forth above are clearly alleged in the questioned specification. Doubt arises only as to whether the wording of the specification, with sufficient clarity, charges that accused made a claim against the United States.

Defense counsel contend that the specification alleges merely the preparation of a claim and contains no allegation which carries the act of the accused beyond the preparatory stage. This contention must be based on the fact that the phrase "by preparing a request for commutation of rations for presentment to the commanding general of said air station" negatives the clear import of the other language in the specification which alleges a false and fraudulent claim was made. We may concede that the mere writing of a pretended claim, unbeknown to any one but the composer, would constitute no crime at all as the provisions of Article 132, Uniform Code of Military Justice, supra, require some further act to cause the writing to become a demand against the Government. But it must be remembered that we are not dealing with an attack on a pleading because of a claimed uncertainty or ambiguity. It is here attacked as a nullity because the contention is made that it does not state any offense. When an accused pleads guilty and does not question the specification until on appeal, he cannot assail a defective, inaccurate, or insufficient specification unless the deficiencies are such that no offense is stated. In order to determine whether a specification is sufficient for that purpose, we must give the words and phrases used their ordinary meaning, and the touchstone by which the language of this specification must be measured, therefore, lies in the meaning to be given to the phrase that accused "did . . . make a claim against the United States." Some light on the meaning of the phrase may be found in the discussion of Article 132, contained in the Manual (paragraph 211a, page 377):

"A claim is a demand for a transfer of ownership of money or property and does not include requisitions for the mere use of property.

"Making a claim is a distinct act from presenting it. A claim may be made in one place and presented in another. The article does not relate to claims against an officer of the United States in his private capacity, but to claims against the United States or any officer thereof as such. It is not necessary that the claim be allowed or paid or that it be made by the person to be benefited by the allowance or payment. The claim must be made with knowledge of its fictitious or dishonest character. . . . ."

An explanation of the foregoing Manual statements is found in the Legal and Legislative Basis of the Manual for Courts-Martial, United States, 1951, at pages 291 and 292. There the meaning of "making" and "presenting" a claim is pointed out in the following language:

"It is stated in paragraph 211a that 'making a claim is a distinct act

**381**

from presenting it. A claim may be made in one place and presented in another.' This distinction is made in Article 132(1) between Section (A), which covers making any claim, and Section (B), presenting for approval or payment any claim. As to what acts would be sufficient to support a charge of 'making' a claim as distinguished from 'presenting' a claim, a brief review of the history of these terms appears necessary.

"This same statement has appeared in the Manuals for Courts-Martial, 1921, 1928, and 1949, and appears to be based upon a statement of Colonel Winthrop in his Military Law and Precedents (2d Ed. 1920, reprint, Note 25, p 698):

" 'That the making and presenting are distinct offenses under this statute, so that the making of a false claim may be completed in a distant State while the presenting of the same may be committed at Washington, D. C.,—see Ex parte Shaffenburg, 4 Dillon 271,' (Fed. Cas. No 12, 696 (1877))."

The discussion then continues with a statement of the facts and ruling in Ex parte Shaffenburg, 4 Dillon 271, Fed Cas No 12,696 (1877), to the effect that where a marshal in Colorado prepared a false claim and had it approved there by a Federal judge and later caused it to be presented to the Treasury Department in Washington for payment, he could not, upon trial in Colorado for making a false claim, contest the jurisdiction of the Federal court by claiming that no offense was committed until the presentment in Washington because the statute set out two distinct offenses. The discussion in the Legal and Legislative Basis for the Manual then states:

" 'Making a claim' within the meaning of the Criminal Code has been judicially defined as the 'asking or demanding . . . from the Government of payment for services.' United States v. Bittinger (DC Mo., 1875), 24 Fed. Cas. No. 14,599. The Shaffenburg case does not indicate what acts alone might constitute 'making a claim,' and no Federal case

**382**

has been discovered which supports a view that a claim can be 'made' without, in some manner, presenting it or causing its submission, i.e., without making of it a 'demand.' In fact, a charge in one count of making and presenting a false claim against the United States has been held not bad for duplicity as charging two offenses:

" 'The gist of the offense [is] the obtaining, or attempting to obtain, money from the United States by means of a fraudulent claim, and the acts charged [are] but different steps in the commission of such offense, although either alone is made punishable.' Bridgeman v. United States, 140 F. 577.''

Implicit in the language of the previous quotations is a holding that some act, not necessarily █ amounting to presentment for payment, is necessary before a writing can be considered a claim. Undoubtedly this act would be one which would start the claim in circulation in official channels. We need not determine precisely what acts would be necessary to do this. All we need determine is whether from a fair interpretation of the language of this specification there is alleged something which states more than that accused was merely preparing to commit an offense.

The specification alleges that the accused did make a claim by preparing a request for commutation of rations for presentment to the commanding general. If we interpret the statement in the light of the normal method of processing vouchers for commutation of rations, we have no difficulty in finding an offense has been alleged. Usually the person who executes the voucher does not personally present it to the commanding general. This is normally done by administrative personnel from the unit or by members of the finance section and the claimant ordinarily does no more than leave it with either. Therefore, an allegation that the accused did make a claim against the United States is susceptible of an interpretation that a voucher was pre-

pared by him and placed in the hands of some individual who in the normal course of events would present it to the general.

Unless this or some other reasonable interpretation is accepted, the allegation of making a false claim is meaningless. Under any recognized rule of interpretation this must be avoided if reasonably possible. All ■ words and phrases contained in the specification should be given force and effect. Moreover, when attacked by an assertion that it does not state an offense, the fact that a specification overstates a cause, or does not state an offense as fully or as certaintly as should be, is not fatal. The Manual has prescribed a method by which an accused can require a properly worded specification. Awkward, inartful or unnecessary ■ expressions in a charge may be assailed by motion before or during trial but they cannot be the foundation for a reversal in an appellate court when they have not been attacked previously and a plea of guilty has been entered. In this instance the accused was fully and fairly informed that he was being charged with making a false claim against the Government, and it took careful study to discover the claimed defect in the pleading. In United States v. Marker (No. 281) 3 CMR 127, decided May 19, 1952, we announced the following doctrine:

"Fortunately we are no longer bound by the ancient rigor of pleading at common law. It is the modern rule that formal defects in indictments, not prejudicial, will be disregarded. 'The true test of the sufficiency of an indictment is not whether it could have been more definite and certain, but whether it contains the elements of the offenses intended to be charged.' Hagner v. United States, 285 U. S. 427, 431, 76 L ed 861, 865, 52 S Ct 417. If the indictment informs the accused of what he must be prepared to meet, and is sufficiently definite to eliminate the danger of future jeopardy, it will be held sufficient. Martin et al. v. United States, 299 Fed. 287 (C. A. 4th Cir.); Roberts v. United States, 137 F. 2d 412 (C. A. 4th Cir.); Nye v. United States, 137 F. 2d 73 (C. A. 4th Cir.)."

The specification meets this standard and while it may have, in one sense, suggested mere preparation, when considered as a whole, it is sufficient to state an offense. Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.