UNITED STATES, Appellee

v.

KING B. LEACH, Private E-2, U. S. Army, Appellant

5 USCMA 466, 18 CMR 90

No. 5454

Decided February 11, 1955

Lt Col Joseph L. Chalk, U. S. Army, Maj Edwin Doran, U. S. Army, 1st Lt Albert T. Ussery, U. S. Army, and 1st Lt Richard C. Shadyac, U. S. Army, for Appellant.

Lt Col Thomas J. Newton, U. S. Army, Lt Col William R. Ward, U. S. Army, 1st Lt A. Kenneth Pye, U. S. Army, and 1st Lt Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

A general court-martial found this accused guilty under eleven separate specifications, each alleging the presentation of a false claim against the United States, contrary to Article 132,

Uniform Code of Military Justice, 50 USC § 726; and one specification alleging impersonation of a noncommissioned officer, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. In addition, he was charged with forgery of a military leave permit, but was acquitted of that offense. His sentence, as modified by the convening authority and affirmed by the board of review, is a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years. In his petition for review, among other grounds, he alleged that there was prejudicial error in the instructions of the law officer, and we granted review to consider that point.

We will relate the essential facts in order to make clearer the basis for our holding. The accused was a member of the 393d Field Artillery Battalion stationed at Kitzingen, Germany. On September 16, 1953, he was granted a thirty-day leave to return to the United States because of a death in his family. At the time he left his station in Germany he was being paid in cash only $10 a month, as the balance of his earnings was being withheld to repay prior casual advancements. While in the United States, he pursued the course of conduct which gave rise to these charges. In general, it was as follows: Between September 22, 1953, and October 16, 1953, he received, from Finance Offices at seven different military installations in the United States, eleven part payments totalling $600. Five of these installations were in the Washington, D. C., area and the method of obtaining the money did not differ materially from place to place. We therefore relate the facts of the payment at Fort Myer, Virginia, on September 28, 1953, as typical of the method by which the crimes were committed.

On that date, the accused presented himself at the Finance Office at Fort Myer and requested an advance payment of $45. The request was directed to one Lieutenant Ryan who was an officer authorized to approve and pay enlisted personnel. The accused was required to identify himself by showing his leave orders and identification card, and it was then explained to him that he could not be paid the $45 requested unless he had earned that amount since his last full or casual payment. He assured the Lieutenant he was entitled to the advance and, after receiving the sum, he signed the casual payment receipt. The representations made by him were false, for he had received a $50 payment that same day from the Finance Office, United States Army, located in Southwest Washington, D. C., and an additional $40 from the Pentagon Disbursing Division six days previously. The eight additional claims were presented by him within an eighteen-day period and, while the amounts he obtained may have varied and the total of his indebtedness increased, other details of the transactions differed little.

In one aspect the Fort Myer transaction is set apart from the others. The distinction lies in the fact that on that occasion the accused appeared at the Finance Office wearing Corporal chevrons on his uniform and with one copy of his leave orders altered to show his rank as Corporal rather than as Private E-2. His correct rank was discovered, however, and he was paid on his appropriate grade. The altered leave orders were taken from him and forwarded to his commanding officer. These together with his misrepresentation of grade resulted in the added charges of forgery and impersonation.

On this appeal we are concerned only with the error, if any, that affects the findings on the eleven false claim specifications. Article 132 of the Code enumerates certain frauds against the Government. In subsection (1) (A), it prohibits the making of a false claim against the United States with knowledge of its falsity; and in subsection (1) (B), it forbids the presentation of a false claim against the United States with identical knowledge. The Manual for Courts-Martial, United States, 1951, treats these as separate offenses, and we have so held in United States v. Steele, 2 USCMA 379, 9 CMR 9. The specifications here allege the presentation of false claims, yet the law officer

instructed the court-martial on the making of false claims. The relevant part of his instruction on this point follows:

". . . In order to find the accused guilty of the offense set forth in each of the eleven specifications under charge one the court must be satisfied by legal and competent evidence in each instance beyond a reasonable doubt;

First, that at the time and place and in the manner alleged, the accused made a claim against the United States as alleged;

Two, that the claim was false and fraudulent as alleged;

Third, that when the accused made the claim he knew it to be false and fraudulent;

Four, that such claim was false and fraudulent in the amount alleged, or in some lesser amount, in which case the finding should be in the lesser amount."

The rule in the military community, as well as the civilian, is that failure to instruct on each element of an offense is error of law. United States v. Clay, 1 USCMA 74, 1 CMR 74; United States v. Rhoden, 1 USCMA 193, 2 CMR 99; United States v. Strong, 1 USCMA 627, 5 CMR 55; United States v. Cromartie, 1 USCMA 551, 4 CMR 143. But, in those instances where no possible prejudice from the error could have resulted to the accused, or where the instructions were not correct but they placed a burden on the court-martial to find all the elements of the offense, a finding of guilty will not be reversed. Article 59(a), Uniform Code of Military Justice, 50 USC § 646.

Close to the principles we believe should govern this case are those found in United States v. Kubel, 1 USCMA 645, 5 CMR 73, where the accused was charged with larceny of property belonging to the United States and unlawful sale of the same property. The instructions on the element of the unlawful sale were given accurately, but the law officer failed to instruct on the value of the property stolen and the intent necessary to a finding of larceny. We held the error to be nonprejudicial because (1) since the property involved in the two crimes was the same, the value under the first finding fixed the value under the other; and (2) after finding that the accused made a sale of the property to another, the court-martial could not have found that he did not intend to permanently deprive the owner of possession. In essence, the record established that to find on one offense the court-martial had to find on the other. Here, since the facts are such that the instructions given required the court-martial to find on all the elements charged, we envisage no prejudice to the accused.

So that it may be readily ascertained whether the error in this case was prejudicial to the accused, we juxtapose the elements of the offense charged and those included in the instruction. In substance, they are:

| Specification | Instruction |
|---|---|
| 1. That the accused presented to a person having authority to approve or pay it, a claim against the United States. | 1. That the accused made a claim against the United States. |
| 2. Such claim was false or fraudulent. | 2. Such claim was false or fraudulent. |
| 3. That when the accused presented the claim he knew it was false or fraudulent. | 3. That when the accused made the claim he knew it was false or fraudulent. |
| 4. The amount involved. | 4. The amount involved. |

There is exactness between the second and fourth elements in each column, and the only discrepancy between what was required in the way of instruction and what was given arises because the law officer required a finding of making instead of presenting a claim. That error creeps into the first element set out in the columns and therein lies the only discrepancy with which we need be concerned because the third element more directly deals with knowledge of the

**469**

falsity. If the failure to instruct accurately on the first element were prejudicial, we should reverse on the affected findings, but for reasons which follow we conclude it was not.

First, the record shows that the accused's theory of defense was his lack of knowledge that the claims were fraudulent. In order to prove this, defense counsel produced evidence that the accused had an intelligence quotient of 72, that he could neither read nor write, and that he had been misinformed on his right to receive casual payments. That was the line of defense. There was no dispute between the parties about the facts that the accused appeared at the places alleged on the dates alleged; that he made and presented, for approval or payment to a person authorized to approve or pay them, claims against the United States; that the claims were false or fraudulent; or, that they were in the amounts stated. In his summation of the issues, defense counsel expressly admitted that the accused had made a presentation of these claims.

The findings, standing alone, might not be sufficient to withstand attack, but when considered with the evidence and the instructions, it becomes reasonably clear that the court-martial had to consider making a claim and presenting a claim as synonymous phrases. It is true that, under different circumstances, we have held the two are not identical; but where, by the undisputed facts of the case, they are so closely intertwined that the performance of one is a performance of the other, then a finding of one is a finding of both. In United States v. Steele, supra, we stated our views on the two offenses in the following language:

". . . Some light on the meaning of the phrase may be found in the discussion of Article 132, contained in the Manual (paragraph 211a, page 377):

'A claim is a demand for a transfer of ownership of money or property and does not include requisitions for the mere use of property.

'Making a claim is a distinct act from presenting it. A claim may be made in one place and presented in another. . . .'

"An explanation of the foregoing Manual statements is found in the Legal and Legislative Basis of the Manual for Courts-Martial, United States, 1951, at pages 291 and 292. There the meaning of 'making' and 'presenting' a claim is pointed out in the following language:

'It is stated in paragraph 211a that "making a claim is a distinct act from presenting it. A claim may be made in one place and presented in another." This distinction is made in Article 132(1) between Section (A), which covers making any claim, and Section (B), presenting for approval or payment any claim. As to what acts would be sufficient to support a charge of "making" a claim as distinguished from "presenting" a claim, a brief review of the history of these terms appears necessary.'

. . . . .

"Implicit in the language of the previous quotations is a holding that some act, not necessarily amounting to presentment for payment, is necessary before a writing can be considered a claim. Undoubtedly this act would be one which would start the claim in circulation in official channels."

In every instance where this accused started his claim circulating in official channels, he did so by requesting payment from a representative of the Finance Office. Each request was complied with, each claim was paid, and the very act of demanding a casual payment from the finance officer constituted presenting the claim to someone with authority to approve and pay it. The evidence irrefutably established that; and when the court-martial found the accused made a claim, it had to find he presented one because it could not factually isolate one from the other. In that background they are not separate steps in the same transaction—they merge into one step.

In their brief, appellate defense counsel urge us to adopt the civilian rule, apparently in the belief that to do so

470

would require a reversal. Such a result does not follow. In Hewitt v. United States, 110 F2d 1 (CA8th Cir), the district judge had instructed the jury that, as a matter of law, the bank which the defendant allegedly robbed was a member of the Federal Deposit Insurance Corporation. On appeal, the defendant complained that, in order to find him guilty, the jury had to find that particular element as a fact. The Court of Appeals refused to reverse the conviction, with the following explanation of its reasons:

"If the instruction complained of had related to a fact which was in actual controversy, there would be much force in the defendant's contention that this Court should take notice of it regardless of the fact that it was not excepted to. It is obvious, however, that, while in a technical sense the allegation that the bank was an insured bank was controverted, in a practical sense there was no controversy about the matter whatsoever. That the bank was insured and that it had been robbed was not, and is not now, in dispute. The government contended that Hewitt was an aider and abettor. He contended that he was not. That presented the real issue. To send this case back for a retrial because the court (probably inadvertently) stated to the jury that as a matter of law the bank was a member of the Federal Deposit Insurance Corporation, could not, from a practical standpoint, be justified."

Supporting this rule are Condello v. United States, 297 F 200 (CA2d Cir); United States v. Jonikas, 197 F2d 675 (CA7th Cir); and Horning v. District of Columbia, 254 US 135, 41 S Ct 53, 65 L ed 185. Here, had there been any real issue between making and presenting, or had there been facts which established the former but left some doubt about the latter, a reversal might have been required. Absent these, and no other matter of a prejudicial nature having been found, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

BROSMAN, Judge (dissenting):

The present case goes much too far—and I cannot agree with my brothers in their disposition of it.

The author of the principal opinion concedes that the *making* of a false claim and the *presentment* thereof to a person having authority to pay it constitute wholly distinct offenses which are, presumably, separately punishable. See Uniform Code, Article 131, 50 USC § 725; Manual, paragraph 211. Cf. Article 123, 50 USC § 717; Manual, paragraph 202. Thereafter he affirms findings of guilty of offense A—following the delivery of correct instructions founded on offense B.

While it is true that the defense did not rely at the trial on the difference between making and presentment, I certainly know of no holding of ours to the effect that—on the basis of waiver, because of his theory of defense, or otherwise, save in the case of a judicial confession—an accused may remove the material prejudice inherent in a law officer's total failure to instruct on the offense charged against the former and of which he was found guilty and punished.

As for United States v. Kubel, cited and relied on by the majority, the situation before us there may be distinguished readily—and I am sure that in it we went as far as we should go. There, in light of the instructions measured as a whole, together with the findings returned, the record conclusively established that the court-martial must necessarily and affirmatively have found the elements missing from the law officer's charge on larceny, one of the *two* offenses alleged. It would be supererogative to seek to demonstrate that we are not at all confronted by a problem of that nature here.

I am convinced that to go in the direction pointed by the Hewitt case, cited by my associates, would be to permit this hard case to make an extremely unfortunate contribution to the military law of instructions. I believe that this conclusion is consistent with—even required by—my previous opinions in the area.