**UNITED STATES, Appellee,**

v.

**Staff Sergeant Herman J. THOMAS,
081–48–6818, United States
Army, Appellant.**

**ACMR 8802355.**

U.S. Army Court of Military Review.

16 July 1990.

For Appellant: Captain Alan M. Boyd, JAGC (argued); Lieutenant Colonel Russell S. Estey, JAGC (on brief).

For Appellee: Captain George R. Johnson, JAGC (argued); Major Martin D. Car-

penter, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Colonel Alfred F. Arquilla, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

**PER CURIAM: ***

Appellant was tried by a general court-martial composed of officer and enlisted members at Stuttgart, Federal Republic of Germany. Pursuant to his pleas, he was convicted of conspiracy to commit larceny and making a false claim in violation of Articles 81 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 932 (1982) [hereinafter UCMJ]. Appellant's sentence, approved by the convening authority, included a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to Private E1. Before us, appellant contends that the Department of the Army Form 2496, "Winner of Bingo Jackpot (Statement)" [hereinafter winnings statement form], that he completed and submitted after the bingo game in question, constituted neither an enforceable demand against the government for money nor enforcement of his apparent right to the bingo jackpot. Thus, he argues that his actions were outside the ambit of Article 132, UCMJ, and that the military judge erred by accepting his plea of guilty thereto. We disagree.

The evidence of record reveals that a friend of appellant's, Sergeant First Class (SFC) Henry, was employed after duty hours at the Patch Barracks Noncommissioned Officers Club. His duties included selling cards for and managing bingo games at the club, in which capacity he was prohibited by regulation[1] from participating in such games himself. Nevertheless, SFC Henry would surreptitiously play bin-

---

* Judge Joseph A. Neurauter took final action in this case prior to his reassignment from the Court.

1. Army Regulation 215–2, Morale, Welfare & Recreation: The Management & Operation of Army Morale, Welfare & Recreation Programs & Nonappropriated Fund Instrumentalities, para. 3–30(c) (30 March 1988).

go while conducting the games. In the event that he had a winning card, he would slip the card to appellant who, claiming the card as his own, would collect the winnings and turn the money over to SFC Henry. Appellant would thereafter receive a small portion of the winnings for his trouble. Between March and June 1988, SFC Henry won several small amounts and received the winnings through appellant in the agreed-upon fashion.

On 19 June 1988 SFC Henry and appellant were playing bingo next to each other. It was jackpot night and SFC Henry, who had sold appellant the card with which appellant was playing, was helping to conduct the game. SFC Henry was playing his own card which eventually won, at which time he pushed it over to appellant and asked him to call "bingo." Appellant did as requested, and then completed a winnings statement form given to him by the bingo game cashier (Appendix). Appellant printed his name, social security number, and unit address on Part I of the form, signed it as the winner of the jackpot on Part II and returned the form to the cashier along with the winning bingo card. The cashier told appellant to pick up his $5,000.00 jackpot from the Central Accounting Office within five days.

Although the winnings statement form completed by appellant was forwarded to the Central Accounting Office for processing, it was held there pending resolution of appellant's claim to the bingo jackpot. Appellant never attempted to collect the winnings and, when questioned by the United States Army Criminal Investigation Command, he confessed to having claimed SFC Henry's card as his own.[2]

"Making a claim" upon or against the United States consists of asking or demanding that the government make payment to a person for having rendered "le-

gal and recognized equivalents" to the United States. *United States v. Bittinger*, 24 F.Cas. 1150 (D.C.W.D.Mo.1875) (No. 14,-599). As a result of the great number of frauds perpetrated upon the United States Treasury during the Civil War, Congress enacted legislation in 1863[3] to prevent and punish such frauds. W. Winthrop, Military Law and Precedents 698 (2d ed. 1920). This statute was subsequently incorporated into military jurisprudence as the Sixtieth Article of War. *Id.* Then, as now, "the gist of the offense [was] the obtaining, or attempting to obtain, money from the United States by means of a fraudulent claim...." *Bridgeman v. United States*, 140 F. 577 (9th Cir.1905).

The United States Supreme Court has interpreted a "claim" under The False Claims Act[4] as "an attempt, by fraud, to cause the Government to part with its money or property, either in discharge of an obligation or in response to an application for discretionary action." *United States v. Neifert–White Co.*, 390 U.S. 228, 231, 88 S.Ct. 959, 961, 19 L.Ed.2d 1061 (1968). For such an attempt to qualify as a "claim," it must have "the purpose and effect of inducing the Government immediately to part with the money." *Id.* at 232, 88 S.Ct. at 961. It is not necessary that the claim be legally enforceable, for the statute proscribes "all fraudulent attempts to cause the Government to pay out sums of money." *Id.* at 233, 88 S.Ct. at 962.

Federal courts and military courts have recognized that under the False Claims Act and Article 132, UCMJ, merely creating a fraudulent document does not by itself constitute "making a claim." *United States v. Steele*, 9 C.M.R. 9, 12 (C.M.A.1953). As the United States Court of Military Appeals held in *Steele:*

---

2. SFC Henry was tried and convicted of larceny of United States currency of some value on divers occasions between 1 March 1988 and 19 June 1988, and sentenced to a bad-conduct discharge and four months confinement. *United States v. Henry*, ACMR 8900420. We affirmed the finding of guilty and the sentence. *Henry*, slip op. at 1 (A.C.M.R. 30 January 1990) (unpub.).

3. Act of March 2, 1863, C. 67, entitled "An Act to prevent and punish frauds upon the Government of the United States."

4. 18 U.S.C. §§ 287, 1001 (1982), *amended by* 18 U.S.C. § 287 (Supp. IV 1986); (originally enacted as Revised Statutes §§ 3490, 5438 (1878)).

[S]ome act, not necessarily amounting to presentment for payment, is necessary before a writing can be considered a claim. Undoubtedly this act would be one which would start the claim in circulation in official channels. We need not determine precisely what acts would be necessary to do this. All we need determine is whether from a fair interpretation of the language of this specification there is alleged something which states more than that accused was merely preparing to commit an offense.

*Id.; see United States v. Couch,* 2 M.J. 286, 288 (A.F.C.M.R.), pet. denied, 2 M.J. 187 (C.M.A.1976). *Cf. United States v. Staats,* 49 U.S. (8 How.) 41, 45, 12 L.Ed. 979 (1850) ("The transmission ... of any ... writing, to any office or officer of the government, in support of, or in relation to, any account or claim, with the intent to defraud the United States, knowing the same to be false, are the only essential elements.").

It is against this backdrop that we now examine appellant's arguments with regard to Article 132, UCMJ, the elements of which are:

(a) That the accused made a certain claim against the United States or an officer thereof;

(b) That the claim was false or fraudulent in certain particulars; and

(c) That the accused knew that the claim was false or fraudulent in these particulars.

Manual for Courts–Martial, United States, 1984, Part IV, para. 58b(1). By way of explanation, the following definitions are provided:

(a) *Claim.* A "claim" is a demand for a transfer of ownership of money or property and does not include requisitions for the mere use of property ...

(b) *Making a claim.* Making a claim is a distinct act from presenting it. A claim may be made in one place and presented in another. The mere writing of a paper in the form of a claim, without any further act to cause the paper to become a demand against the United States or an officer thereof, does not constitute making a claim. However, any act placing the claim in official channels constitutes making a claim, even if that act does not amount to presenting a claim. It is not necessary that the claim be allowed or paid or that it be made by the person to be benefited by the allowance or payment.

*Id.,* Part IV, para. 58c(1)(a) and (b).

The evidence of record establishes that appellant fraudulently claimed the bingo jackpot by completing the winnings statement form which placed it in official channels for processing and ultimate payment by the Central Accounting Office. Appellant's claim was against an instrumentality of the government of the United States. *See Standard Oil Company of California v. Johnson,* 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942) (nonappropriated fund activities are government instrumentalities). Appellant's activities clearly fall within the range of conduct prohibited by Article 132, UCMJ, and his plea of guilty to the Specification of Charge III was therefore provident.

The findings of guilty are affirmed. However, only so much of the sentence as provides for a bad-conduct discharge, forfeiture of $447.00 per month until the discharge is executed, and reduction to Private E1 is affirmed. *United States v. Warner,* 25 M.J. 64 (C.M.A.1987).

# DISPOSITION ORM APPENDIX

1289-88-2D497-36884

| EXHC | Winner of Bingo Jackpot (Statement) | | |
|------|------|------|------|
| TO Central Accounting Valdez Barracks | FROM NCO/EM Club Patch Barracks | DATE 17 Jun 78 55 | CMT 1 |

DATA REQUIRED BY THE PRIVACY ACT OF 1974 (5 USC 552a)
AUTHORITY: Title, USC, Chapter 41 generally and by Executive Order 11348 of April 1967
Principal Purposes: Statement showing receipt of non receipt of Bingo Jackpot.
Routine Uses: Identification for collection of accounts due.
MANDATORY OF VOLUNTARY DISCLOSURE AND EFFECT ON INDIVIDUAL OF NOT PROVIDING INFORMATION: Disclosure of the SSN is mandatory in order to correctly identify the individual concerned.

Club card # 003344     PART 1

I state that the bingo jackpot of _____ $500
                                    (amount written out and figures)
was won by THOMAS          Herbert          (__)        ___
          (last name)      (First Name)     (MI)      (rank)

C01-45-6013  HHC US Corps    (APO)       6 121 1111
   (SSN)      (organization)   (APO)      (office phone)

and the above named person has been instructed to report to the next 5 working days to collect winnings. Said bingo winner has not received any of the jackpot amount.

____53____                    _____
(annex number)                (signature of bingo cashier)

PART 2

                                          E7 Jun 55
                                          (date)

TO THE WINNER OF BINGO JACKPOT: I state that the name, rank, SSN, entered above is correct and I am the person who won the jackpot, and have not received payment as of this date.

_____          _____
(signature of witness)          (signature of winner)

PART 3

                                   _____
                                          (date)

TO BE COMPLETED AT TIME CHECK IS RECEIVED: I state that I have received AMERICAN EXPRESS CO. Check NO._____ for $7DM_____ and that previous payment,partial,or full has not been received.
ID Card No._____

                              _____
                              (signature of winner)

DA FORM 2496
AUG 80

Exhibit_____     APPELLATE EXHIBIT VI