**UNITED STATES, Appellee,**

v.

**Herman J. THOMAS, Staff Sergeant, U.S. Army, Appellant.**

No. 65,459.

8802355.

U.S. Court of Military Appeals.

Argued March 14, 1991.

Decided Sept. 18, 1991.

For Appellant: *Captain Alan M. Boyd* (argued); *Lieutenant Colonel Russell S. Estey* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Donna L. Barlett* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial which included enlisted members at Stuttgart, Federal Republic of Germany, on October 21, 1988. Pursuant to his pleas, he was found guilty of conspiracy to commit larceny and making a false claim against the United States, in violation of Articles 81 and 132, Uniform Code of Military Justice, 10 USC §§ 881 and 932, respectively. He was sentenced to a bad-conduct discharge, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved this sentence. On July 16, 1990, the Court of Military Review affirmed these findings but only so much of the sentence as included a bad-conduct discharge, forfeiture of $447.00 pay per

month until the discharge is executed, and reduction to pay grade E–1. 31 CMR 517, 519.

On November 29, 1990, this Court granted the following issue for review:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY HOLDING THAT APPELLANT'S PREPARATION OF THE BINGO JACKPOT STATEMENT FELL WITHIN THE RANGE OF CONDUCT PROHIBITED BY UCMJ, ARTICLE 132.

We hold that the Court of Military Review did not err in affirming appellant's pleas and resulting conviction of making a false claim, in violation of Article 132. *United States v. Harrison*, 26 MJ 474 (CMA 1988).

Appellant pleaded guilty to committing a fraud against the United States. Art. 132. The specification of which he was found guilty states:

SPECIFICATION: In that [appellant], did, at Patch Barracks, Vaihingen, Federal Republic of Germany, on or about 19 June 1988, *by preparing a bingo jackpot statement for presentment for approval or payment, make a claim against the United States* in the amount of $5000.00 for winning a bingo jackpot, which claim was totally false and fraudulent *in that the bingo jackpot statement submitted to duly authorized officials was based on an invalid bingo card* and was then known by the said Staff Sergeant Herman J. Thomas to be false and fraudulent.

(Emphasis added.)

At trial he entered into a stipulation of fact concerning this charge.

That on or about November 1987, the accused met Sergeant First Class Hilton A. Henry on Bingo Night at the Patch Barracks Noncommissioned Officers' Club. The two knew each other from a previous assignment. A few months later when the Bingo Jackpot escalated from $2,500.00 to $5000.00, SFC Henry approached the accused about helping him defraud the club system. Between on or about 1 March 1988 and 19 June 1988, the accused agreed with Henry to commit larceny of property of the United States government, which constitutes a crime under the UCMJ. At that time the accused and Henry agreed that Henry, a Bingo Night Manager, would play invalid bingo cards in the jackpot bingo game. When the numbers on one of these invalid bingo cards matched those called to win a game, Henry would slide the card to the accused who would yell "Bingo," to signify that the card purporting to be his had won the jackpot. The accused would then sign the appropriate claim statement and present both the statement and the invalid bingo card for approval and payment. The accused and Henry further agreed each would receive a share of any amount that was collected by the accused when he presented the documentation for payment. On at least two occasions between March and June 1988 the accused and Henry executed the above-mentioned plan and won a total of approximately $50.00 to be split between them. Then about 19 June 1988 the accused and Henry in furtherance of the aforesaid agreement, wrongfully and unlawfully obtained a bingo card. The card, played by Henry, won the Bingo jackpot in the amount of $5000.00. Henry then passed this card to the accused. *The accused yelled "Bingo" and prepared a bingo jackpot statement, DA Form 2496, to be presented as a claim for approval of $5000.00 against the United States. The accused then presented the claim to the appropriate authorities of the club system to be processed by the Central Accounting Officer, an officer in the civilian or military service of the United States having authority to pay bingo winning claims against the United States.* During the entire period from 1 March till 19 June 1988 the accused knew that Henry, by virtue of his status as an employee of the club system, was not entitled to purchase bingo cards or present claims for winnings. On the night of 19 June 1988 the accused knew that Henry was wrongfully playing an invalid bingo card and

the accused also *knew that the claim for $5000.00 that he made and presented against the United States* was false and fraudulent in that the bingo card was invalid and was played by Henry, an ineligible player, and not by the accused. (Emphasis added.)

Appellant also was specifically questioned about the nature of his claim by the military judge, as follows:

MJ: After he won this jackpot that you played for him, what did you do to try to collect the $5,000.00?

ACC: After, you know, they called the last number, the jackpot, you raise your card and you say, "Bingo," okay, the lady come over with the form to fill out. Print your name, your social security number, and your unit address and you just sign it and you give her the form. Then, she will take care of the rest of it.

MJ: Who is this woman?

ACC: A lady that was working there that day.

MJ: All right. So, you filled out a form?

ACC: Um-hum. Yes, sir.

MJ: Do you know the name of the form?

[The accused and civilian defense counsel conferred in private and went through papers in a folder on the defense table.]

ACC: It's a DF, sir. Winner——

MJ: A Disposition Form?

ACC: Yes, sir.

MJ: And, that's the only thing you fill out?

ACC: The DA 2496, sir. It's called a "Winner of Bingo Jackpot (Statement)."

*MJ: All right. And that's the only form that you fill out to get the $5,000.00?*

*ACC: Yes, sir.*

MJ: And, you gave it to this woman?

ACC: Yes, sir.

MJ: And, what did she do with it?

ACC: She sent—take it into the manager and he'll just send it up to the Central Finance Accounting Office.

MJ: All right. When you filled out the form, did you know that's how they processed these things?

ACC: Um-hum. Yes, sir.

MJ: And so, who presented the claim to the Finance Officer for payment?

ACC: The—I guess the Club System, sir.

MJ: The Club System?

ACC: Yes, sir.

MJ: And, when—did you ever get the $5,000.00?

ACC: No, sir.

MJ: What happened?

ACC: I did not collect it. I did not get it, sir.

MJ: Why not?

ACC: Because I wasn't feeling right. It wasn't right, you know, and I didn't collect it. I just went to CID—when the CID called me up, I just went and that's it.

MJ: The CID called you up and you told them about it?

ACC: Yes, sir.

(Emphasis added.)

Earlier the judge questioned him about his claim's officiality for purposes of Article 132. The military judge said:

[S]o again, we're talking at Patch Barracks in Vaihingen, Germany, on the 19th of June—that you made a certain claim against the United States. And, this claim that's listed is a claim against the United States in the amount of $5,000.00 for winning this bingo jackpot. Now, this claim was made to an officer of the United States. Now, I don't think that Specification 1 lists that particular officer of the United States. Who are we talking about?

*TC: The Central Accounting Officer for the United States is one under the employ of the Morale, Welfare, Resource Agency within the United States Army. As such, it's a nonappropriated fund instrumentality of the United States Government.*

MJ: Is that the same person that we talked about—we're going to be talking about in Specification 2, then?

TC: Yes, it is, Your Honor.

MJ: *All right. Do you understand that?*

ACC: *Yes, sir.*

MJ: All right. So, at the time and place I just mentioned, that you made a certain claim against the United States and made it to an officer of the United States—again, that bingo award for $5,000.00, or prize for $5,000.00.

(Emphasis added.)

—

Our initial concern in this case is the phrasing of the granted issue. It suggests that appellant's conduct relating to the false-claim charge consisted solely of filling out the bingo jackpot statement and signing it.[1] We note that his stipulation and guilty-plea inquiry responses show clearly that he also orally asserted to responsible persons at the noncommissioned officers club that he had won the bingo game. Moreover, appellant admitted that he submitted this form and the winning bingo card through official channels for approval by the Central Accounting Office at Valdez Barracks. The Court of Military Review in its opinion below and appellant in his brief recognized the full scope of appellant's conduct.

 The granted issue thus asks whether the above-noted course of conduct constituted making a false claim against the United States in violation of Article 132. Appellant argues for the first time on appeal that some unspecified additional action on his part was required to legally qualify his conduct as making a claim. In any event, he asserts that this was not a claim against the United States because the United States Government was not obligated to pay the prize of a nonappropriated fund activity. Finally, he asserts that the completed bingo jackpot statement was not false in any material matter.

We note that appellant's first argument directly contradicts his providence-inquiry responses that no further action on his part was required prior to his actual collection of the cash prize. *See generally United States v. Neifert–White Co.*, 390 U.S. 228, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968); *United States v. Cash*, 14 USCMA 96, 33 CMR 308 (1963). Post-trial speculation concerning additional regulatory requirements need not now be countenanced. *United States v. Harrison*, 26 MJ at 476. His second argument also is directly contradictory of his trial responses and stipulation that he made a claim against the United States. Moreover, no legal authority has been presented which would raise any doubt concerning the legal propriety of this admission.[2] *See Standard Oil Company of California v. Johnson*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942). *See generally* Department of Army Pamphlet 27–21, *Military Administrative Law*, Chapter 11, Nonappropriated Fund Instrumentalities and Private Organizations (Oct.1985). Finally, appellant's last contention directly contradicts his trial admissions and ignores his admittedly deceitful agreement to conceal Sergeant Harvey's ownership of the bingo card. Therefore, appellant's guilty pleas and his conviction based thereon must stand.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX and Senior Judge EVERETT concur.

---

1. The completed Disposition Form (DA Form 2496) (Aug 80) was reproduced as an appendix to the opinion of the Court of Military Review. 31 MJ 517, 520 (1990).

2. The bingo game at the Patch Barracks Noncommissioned Officers Club was an authorized Army Morale, Welfare, and Recreation Activity. *See* para. 3–30, AR 215–2, Morale, Welfare, and Recreation: The Management and Operation of Army Morale/Welfare and Recreation Programs and Nonappropriated Fund Instrumentalities (Dec. 9, 1987). The Club which conducted the game is a Nonappropriated Fund Instrumentality. *See* AR 215–1, Chapters 2 and 3, Morale, Welfare, and Recreation: The Administration of Army Morale, Welfare, and Recreation Activities and Nonappropriated Fund Instrumentalities (Dec. 9, 1987).